Filed 5/23/14  P. v. Rodriguez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESUS RODRIGUEZ III,<br><br>    Defendant and Appellant. | H039341<br>(Santa Clara County<br>Super. Ct. No. C1120287) |

A jury found defendant Jesus Rodriguez III guilty on:  Count One—felony possession of a destructive device in and near a private habitation and in a public place (Pen. Code, § 18715) [1]; Count Two—felony simple possession of a destructive device (§ 18710); and Count Four—misdemeanor possession of a hypodermic needle or syringe (Bus. & Prof. Code, § 4140).  Defendant admitted a prior "strike" conviction and two prison priors.  (§§ 667, subds. (b)-(i), 1170.12, 667.5, subd. (b).)  The trial court imposed an aggregate term of nine years in prison.

On appeal, defendant contends the conviction on Count Two must be reversed because it constitutes a lesser included offense of Count One.  He also contends his trial counsel was ineffective for failing to object when the trial court struck the testimony of a defense witness who refused to answer a question during direct examination.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

We find both claims without merit, and we will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts of the Offense*

On November 17, 2011, police conducted a search of defendant's home in San José.[2] Defendant's mother led police to defendant's bedroom, where they found mail addressed to defendant on a nightstand next to the bed. Police also found a scale, a hypodermic needle, and three military hand grenade simulators. A hand grenade simulator is a cardboard tube filled with explosive powder that is used by the military in training exercises. The simulators were stored inside a box in a drawer near the end of defendant's bed. The box had compartments to hold five simulators, but it only contained three simulators.

In a statement to police, defendant said he knew about the presence of the grenade simulators, but he thought they were fireworks. He claimed that he bought them on the street for $100, and had detonated two of them during a Fourth of July celebration. He stated that he used the hypodermic needle to inject methamphetamine, and he used the scale to ensure he did not get "shorted" when he bought narcotics.

At trial, defendant testified that he told police he did not know about the grenade simulators. He admitted, however, that he told police he had purchased them on the street for $100 and that he had detonated two of them during a Fourth of July celebration. But he testified at trial that these statements were not true, and that he made these false statements to police because he was trying to take responsibility for the grenade simulators to protect his girlfriend's teenage son, Elias T. Defendant admitted having a prior conviction for misdemeanor possession of illegal fireworks. He also admitted having a prior conviction for gang-related attempted murder, for which he spent 10 years in prison.

---

[2] The parties stipulated to the legality of the search.

2

B. *Procedural Background*

On March 22, 2012, the prosecution charged defendant by information with: Count One—felony possession of a destructive device in and near a private habitation and in a public place (§ 18715); Count Two—felony simple possession of a destructive device (§ 18710); Count Three—felony buying or receiving stolen property (§ 496, subd. (a)); and Count Four—misdemeanor possession of a hypodermic needle or syringe (Bus. & Prof. Code, § 4140). The information also alleged a prior "strike" conviction and two prison priors. (§§ 667, subds. (b)-(i), 1170.12, 667.5, subd. (b).)

On May 18, 2012, the jury found defendant guilty on Counts One, Two, and Four, but acquitted him on Count Three. Defendant admitted the strike prior and the prison priors. The trial court sentenced defendant to an eight-year term on Count One and a six-year term on Count Two, with the latter term stayed under section 654. The trial court then struck one of the prison priors and imposed a consecutive sentence of one year for the remaining prior, for an aggregate term of nine years.

## II. DISCUSSION

A. *Defendant's Convictions on Count One and Count Two Were Proper*

Defendant contends his conviction on Count Two must be reversed because the offense charged in Count Two—simple possession of a destructive device—is a lesser included offense of the offense charged in Count One—possession of a destructive device in and near a private habitation and in a public place. The Attorney General agrees that simple possession is a lesser included offense of Count One, but she contends that both convictions were proper because defendant possessed three separate destructive devices, thereby committing three distinct and separate offenses. We agree.

The California Supreme Court has long held that "multiple convictions may *not* be based on necessarily included offenses." (*People v. Pearson* (1986) 42 Cal.3d 351, 355.) A lesser included offense exists when committing an offense necessarily requires that a lesser offense be committed at the same time. (*People v. Reed* (2006) 38 Cal.4th 1224,

1227.) The Attorney General, however, relies on this court's opinion in *People v. DeGuzman* (2003) 113 Cal.App.4th 538 (*DeGuzman*) for the proposition that a defendant may be charged with multiple counts of possession in violation of the same statute if the defendant simultaneously possesses multiple explosives or destructive devices.

DeGuzman was found in possession of multiple bombs and Molotov cocktails. The prosecution charged him with 54 counts of possessing *any* explosive in a public location (§ 18715, formerly § 12303.2) and 54 counts of possessing *any* explosive with intent to injure (§ 18740, formerly § 12303.3). (*DeGuzman*, *supra*, 113 Cal.App.4th at p. 540.) The jury convicted DeGuzman on all charges, but the trial court dismissed all but one conviction for each offense. On appeal, this court reversed the trial court's dismissal and ordered the trial court to pronouncement judgment on all 108 convictions. (*Id.* at p. 548.) Based on legislative intent, this court held that the term "any" in the language of the statutes defines the unit of possession in singular terms. (*Ibid.*) "A person is therefore subject to multiple convictions under each statute when he or she possesses more than one unlawful item of the same kind at the same time and place." (*Ibid.*) *DeGuzman* establishes that defendant in this case could have been convicted on multiple counts of violating section 18715 because he had numerous grenade simulators in his possession.

Although *DeGuzman* did not consider simple possession under section 18710, that statute uses the same language as section 18715—i.e., both statutes prohibit the possession of "any destructive device." "It is a well-established rule of statutory construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law." (*DeGuzman*, *supra*, 113 Cal.App.4th at pp. 547-548.) Both sections at issue here are part of the same statutory scheme. "It would be incongruous for the Legislature to intend that the word 'any' have a different meaning" in section 18710 than it has in section 18715. We conclude that the Legislature intended for "any

4

destructive device" in section 18710 to be defined in singular units of possession, just as in section 18715. Thus, defendant could simultaneously be convicted for possessing one destructive device under section 18710 and convicted separately under section 18715 for possessing a second, separate destructive device.

Defendant contends that he could not be convicted under both section 18715 and section 18710. He argues that his situation is distinguishable from *DeGuzman* because he was not convicted of multiple offenses under the same statute, and *DeGuzman* did not consider whether a defendant may be convicted of both greater and lesser included offenses. Under the logic of *DeGuzman*, however, possession of multiple destructive devices constitutes multiple violative *acts*. While it may be true that the legal elements of simple possession under section 18710 form a lesser included offense of section 18715, a violation of section 18710 based on a distinct *act* does *not* mean a violation is a lesser included offense when the defendant also engages in a *separate* act violating section 18715. For example, it is well established that voluntary manslaughter is a lesser included offense of murder. But if a defendant kills two persons, he may still be convicted of both murder for killing one person and voluntary manslaughter for killing the other. In other words, the latter conviction for voluntary manslaughter in such a scenario does not meet the definition of a lesser included offense of murder—i.e., that the greater offense necessarily requires the commission of the lesser offense at the same time—because the killing of one person does not necessarily require the voluntary manslaughter of another person at the same time. Similarly, defendant here could have possessed one of the grenade simulators without possessing the others at the same time. Accordingly, we conclude that defendant could be properly convicted under both section 18710—for possession of one of the grenade simulators—as well as section 18715—for possession of one of the other grenade simulators. Accordingly, we reject this claim.

5

B. *Ineffective Assistance of Counsel*

Defendant contends his trial counsel provided ineffective assistance by failing to object when the trial court struck the testimony of his girlfriend's son, Elias T. We conclude the claim is without merit. Even assuming counsel's conduct was deficient, defendant cannot show that he was prejudiced by the failure to object.

1. *Legal Standard*

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 (*Strickland*).) " 'Finally, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) "It is the defendant's burden on appeal [. . .] to show that he or she was denied effective assistance of counsel and is entitled to relief. [Citations.] '[T]he burden of proof that the defendant must meet in order to establish his [or her] entitlement to relief on an ineffective-assistance claim is preponderance of the evidence.' [Citation.]" (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.)

In deciding an ineffective assistance claim, the reviewing court need not inquire into the two components (deficient performance and prejudice) in any particular order; in the event the defendant's showing on one component is insufficient, the court need not address the remaining component. (*In re Cox* (2003) 30 Cal.4th 974, 1019-1020.)

6

## 2. *Procedural Background*

As described above, defendant testified that he told the police the grenade simulators were his because he was trying to protect Elias T., the true owner of the devices. To corroborate his claim, defendant attempted to have Elias T. testify at trial. On direct examination, Elias T. claimed he had received the grenade simulators from a friend. Defense counsel then asked Elias T. to name that friend, but Elias T. refused to name the friend "for the safety of my family." The trial court struck his testimony and instructed the jury not to consider it for any purpose. Defense counsel lodged no objection.

## 3. *Trial Counsel's Failure to Object*

Even assuming defense counsel had objected and the court had not struck Elias T.'s testimony, it is not reasonably probable that the jury would have reached an outcome more favorable to defendant. Defendant's testimony—that the grenade simulators belonged to someone else—lacked credibility, such that an attempt at corroboration by Elias T. would not have persuaded the jury to believe defendant. First, when defendant admitted to the police that the devices were his, he gave them details—such as where he got them, and the price he paid—that would have been unnecessary if he was solely attempting to deflect blame away from Elias T. Second, defendant told the police he had detonated two of the devices, which statement is consistent with the fact that two of the devices were missing from the box that held them. Defendant could not have known about the missing devices if he had not been aware of their presence in the first place. The jury would have to believe that his claim of having detonated two of the devices was purely coincidental to the fact that two of the devices were actually missing. Finally, defendant admitting having two prior convictions—including a conviction for possession of illegal fireworks.

We conclude it is not reasonably likely that the jury would have credited defendant's testimony under these circumstances, even if it had been allowed to consider

7

the stricken testimony from Elias T. Defendant therefore cannot show a reasonable likelihood of a more favorable outcome, and his claim of ineffective assistance of counsel is without merit.

### III.    DISPOSITION

The judgment is affirmed.

_____

Márquez, J.

WE CONCUR:

_____

 Rushing, P. J.

_____

 Premo, J.

8